UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BEACH FORWARDERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 21 C 56 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| SERVICE BY AIR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Beach Forwarders, Inc., which seeks in this diversity suit a declaration that it lawfully terminated its contract with Service By Air, Inc. in August 2020, moves for judgment on the pleadings under Civil Rule 12(c). Doc. 16. The motion is granted.

**Background**

"In a motion for judgment on the pleadings, the court considers the pleadings alone, which consist of the complaint, the answer, and any written instruments attached as exhibits." *Hous. Auth. Risk Retention Grp., Inc. v. Chi. Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004). The facts are set forth as favorably to Service By Air, the nonmovant, as those materials allow. *See Brown v. Dart*, 876 F.3d 939, 940 (7th Cir. 2017).

Both parties are in the freight shipping business. Doc. 1-1 at 2-3; Doc. 20 at 1. In December 2010, the parties entered into an Agent Sales and Service Agreement, under which Beach Forwarders served as Service By Air's exclusive sales and servicing agent in Norfolk and Richmond, Virginia. Doc. 1-1 at 2-50; Doc. 7 at ¶ 7. The Agreement, which refers to Service By Air as "SBA," Doc. 1-1 at 2, provides that it "shall be construed according to the laws of the State of Illinois," *id*. at 45, § 27.

1

Section 3, titled "Term of Agreement," provided that the Agreement "shall … continue to November 21, 2013." *Id*. at 6, § 3. Section 3 further stated that, "[u]nless either party gives written notice to the other of its intention to terminate this Agreement at least thirty (30) days prior to the expiration of the term," the Agreement "will … renew[] for an additional one (1) year term[,] provided [that Beach Forwarders] executes an agreement of the type then currently used by SBA ('Amended Agent Agreement')" and delivers it to Service By Air "within thirty (30) days prior to expiration of the term." *Ibid*. Section 20 of the Agreement, titled "Termination," states in subsection A that Beach Forwarders "may terminate" the Agreement if it provides Service By Air with "written notice of an alleged material breach" and Service By Air fails to cure the breach within ninety days. *Id*. at 38, § 20.A.

On October 31, 2013, Service By Air sent Beach Forwarders an email attaching what it called an "ORF contract extension" and asking Beach Forwarders to "sign it and send [back] the executed copy." Doc. 1-3; Doc. 7 at ¶¶ 10, 26; Doc. 20 at 3. The attachment, titled "Amendment to Agent Sales and Service Agreement," replaces Section 3 of the Agreement in its entirety and adds a subsection to Section 20:

> In consideration of the mutual covenants and provisions herein contained and other good and valuable consideration, SBA and [Beach Forwarders] hereby amend the Agreement as follows:
>
> A.    Section 3. Term of Agreement, is revised as follows:
>
>     (a)    The term of the Agreement is extended to September 30, 2013.
>
>     (b)    The parties agree that the Agreement will annually automatically renew for additional one (1) year periods unless SBA, in its sole discretion, notifies [Beach Forwarders] thirty (30) days before each annual extension of its intention to terminate the Agreement.
>
> B.    Section 20 of the Agreement is amended by the addition of a new Subsection D which reads as follows:

> "SBA, at its sole discretion, may terminate the Agreement upon written notice to [Beach Forwarders] thirty (30) days prior to each annual expiration date."

Doc. 1-2. The Amendment further provides: "Except as amended herein, the Agreement shall be and remain in full force and effect." *Ibid*. Beach Forwarders signed the Amendment and returned it to Service By Air. *Ibid*.; Doc. 1-1 at 51-52; Doc. 7 at ¶¶ 10, 26; Doc. 20 at 3.

Beach Forwarders continued to serve as Service By Air's agent for at least the next six years. Doc. 20 at 5; Doc. 21 at ¶ 9. On August 27, 2020, Beach Forwarders emailed Service By Air a "written notice of its intention to terminate and not renew its relationship with SBA." Doc. 1-5 at 3-5; Doc. 7 at ¶ 32. Days later, Service By Air responded that, under the Amendment, the Agreement "renews automatically each year," and asserted that because "[SBA] has neither breached the Agreement nor has [SBA] been notified of any such breach … the Agreement and Amendment remain in full force and effect." Doc. 1-5 at 2-3; Doc. 7 at ¶ 32. Service By Air added that it "fully expect[ed] [Beach Forwarders] to continue honoring the Agreement and Amendment … ." Doc. 1-5 at 3.

## Discussion

Rule 12(c) motions are governed by the standard applied to Rule 12(b)(6) motions. *See Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). "When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Ibid*. (internal quotation marks omitted).

Beach Forwarders seeks a declaration that it lawfully terminated the Agreement. It offers essentially two grounds for that relief. The first is that the Amendment is a legal nullity—because it is void, unenforceable, and subject to rescission due to being untimely; to its lacking consideration, mutuality of obligation, and a meeting of the minds; and to its resulting from

3

Service By Air's misrepresentations—and therefore that Beach Forwarders could terminate the Agreement under (unamended) Section 3 simply by providing notice to Service By Air, which it did in August 2020. Doc. 17 at 11-15; Doc. 23 at 3-5, 10-15. The second ground is that, even accepting Service By Air's position that the Amendment is legally valid, the Agreement, as amended, is a contract of indefinite duration and therefore is terminable at will by either side. Doc. 17 at 9-10, 13-14; Doc. 23 at 7-10. Because the second ground is correct, there is no need to address the first.

As noted, the Agreement is governed by Illinois law. Doc. 1-1 at 45, § 27; *see* Doc. 17 at 8; Doc. 20 at 1, 6-12. "[I]n Illinois, the construction, interpretation, or legal effect of a contract is a matter to be determined by the court as a question of law." *Horne v. Elec. Eel Mfg. Co.*, 987 F.3d 704, 718 (7th Cir. 2021).

"Under Illinois law, perpetual contracts are disfavored, so the law presumes that such contracts are terminable at will by either party. That is, when the parties agree to a contract of indefinite duration, courts assume that they intend for the contract to be terminable at will." *Burford v. Acct. Prac. Sales, Inc.*, 786 F.3d 582, 586 (7th Cir. 2015) (Illinois law) (citation omitted), *overruled on other grounds by LHO Chi. River, L.L.C. v. Perillo*, 942 F.3d 384 (7th Cir. 2019); *see also Jespersen v. Minn. Mining & Mfg. Co.*, 700 N.E.2d 1014, 1015 (Ill. 1998) ("It has long been recognized that contracts of indefinite duration are generally terminable at the will of the parties."). "This presumption in favor of indefinite contracts being terminable at will can be overcome if the parties *clearly agree* to place limits on when termination may take place." *Burford*, 786 F.3d at 586 (emphasis added); *see also Baldwin Piano, Inc. v. Deutsche Wurlitzer GmbH*, 392 F.3d 881, 885 (7th Cir. 2004) ("The presumption of terminability allows separation in the business world, unless the parties *clearly provide* otherwise.") (emphasis added).

Accordingly, "[a]n agreement without a fixed duration but which provides that it is terminable *only* for cause or upon the occurrence of a specific event is in one sense of indefinite duration, but is nonetheless terminable only upon the occurrence of the specified event and not at will." *Jespersen*, 700 N.E.2d at 1016. Whether a contract of indefinite duration has language that overcomes the terminable-at-will presumption "calls for close parsing of the contract language." *Burford*, 786 F.3d at 586.

Service By Air does not dispute Beach Forwarders's submission that the Agreement, as amended, is a contract of indefinite duration. Doc. 20 at 7-9; *see Burford*, 786 F.3d at 586-87 (holding that a contract that "renews automatically on each anniversary date of th[e] agreement for another period of twelve months" is of indefinite duration, even though one party "could terminate the contract at any time on thirty days' notice"). Nor does Service By Air dispute that, in August 2020, Beach Forwarders communicated to Service By Air its intent to terminate the Agreement. Doc. 7 at ¶ 32; Doc. 20 at 7-9. Instead, Service By Air contends that the Agreement, as amended, overcomes the presumption that contracts of indefinite duration are terminable at will because it "allow[s] [Beach Forwarders] to terminate only when SBA has breached and failed to cure." Doc. 20 at 9.

To support its position, Service By Air relies heavily on *Burford*. *Id*. at 7-9. In *Burford*, a company terminated its contract with a sales representative; the sales representative sued; and the company defended on the ground that the contract was of unlimited duration and therefore terminable at will. 786 F.3d at 584-85. The Seventh Circuit agreed with the company that the contract was of unlimited duration, as it provided that "it renews automatically on each anniversary date of this agreement for another period of twelve months." *Id*. at 586 (internal quotation marks omitted). But the court held that following contractual language overcame the

5

presumption that such contracts are terminable at will: "[The company] cannot terminate this agreement *unless it is violated by [the sales representative]*." *Id*. at 587 (internal quotation marks omitted).

> As the Seventh Circuit explained:
>
> > The plain reading of this statement, and the only one that avoids rendering it meaningless, is that [the company] could terminate the agreement if—but only if—[the sales representative] had breached it. This is the *clear statement* that *Jespersen* and *Baldwin Piano* explained could keep a contract of indefinite duration from being terminable at will. By allowing [the company] to terminate only when [the sales representative] had breached, the contract made as clear as could be that [the company] could not terminate the contract at will.

*Ibid*. (emphasis added). In so holding, the Seventh Circuit articulated and applied a "clear statement" rule for overcoming the presumption that contracts of indefinite duration are terminable at will. *See id*. at 588 (concluding that the terminable-at-will presumption did not apply given "the clear statement [in the contract] that [the company] could not terminate the agreement unless [the sales representative] violated it"); *see also Baldwin Piano*, 392 F.3d at 885 (holding that the presumption stands "unless the parties clearly provide otherwise," and describing *Jespersen* as articulating a "clear-statement rule[]"). Accordingly, the Seventh Circuit observed that it would have found the contract terminable at will "if the contract had said '[the company] may terminate this agreement if it is violated by [the sales representative],' or if, as in *Jespersen*, it merely contained a 'permissive and nonexclusive termination provision' that specified instances of material breach." *Ibid*. (quoting *Jespersen*, 700 N.E.2d at 1016-17). The Seventh Circuit summed up as follows: "There is a decisive difference between saying that A may terminate if B breaches and saying that A may terminate *only* if B breaches. Here, the difference is between reading a sentence out of a contract or not, and between the right to terminate at will or only for cause." *Ibid*. (citation omitted).

6

As *Burford* recognizes, the contract in *Jespersen*—which was between a distributor and a company—did not include the clear statement necessary to overcome the terminable-at-will presumption. That contract was of indefinite duration, providing "that it shall continue in force indefinitely unless terminated in the manner provided in article IV." *Jespersen*, 700 N.E.2d at 1016 (internal quotation marks omitted). Article IV, in turn, stated that "[the company] *may*, upon not less than thirty (30) days notice to the Distributor, *terminate* this agreement for any of the following reasons: (a) Distributor's failure to reasonably promote [the company's] products[;] (b) Distributor's breach of any term or condition of this agreement[;] (c) Distributor's failure to make payment[;] (d) [t]he death, bankruptcy, or insolvency of Distributor[; or] (e) [t]he sale * * * or transfer * * * of all or any part of the Distributor's rights under this contract without the written approval and consent of [the company]." *Ibid*. (emphasis added). Article IV also provided that "Distributor may terminate this agreement upon thirty (30) days written notice to [the company]." *Ibid*. The company terminated the contract; the distributor sued, alleging that the company could terminate only for cause; and the company defended on the ground that the contract was indefinite in duration and therefore terminable at will. *Ibid*.

The Supreme Court of Illinois held that the contract was terminable at will. *Id*. at 1016-17. As the court explained, "the language of the termination provision is permissive and equivocal; a party 'may' terminate for the stated grounds—the clear inference being that those grounds are not the sole or exclusive basis for termination," standing "in stark contrast to a case in which the parties included an exclusive and specific right to terminate for cause in a contract otherwise of indefinite duration." *Id*. at 1016. The court added that "the termination events are themselves instances of material breach, and *any* contract is terminable upon the occurrence of a material breach." *Ibid*. Thus, because the contract did not "provide[] that it is terminable *only*

for cause or upon the occurrence of a specific event," the court held that the above-quoted contractual language did not "take this agreement of indefinite duration out of the general rule of at-will termination." *Ibid*. The court observed that its holding was "further bolster[ed]" by the fact that the distributor "enjoyed [under the agreement] an express, unfettered right to terminate the agreement on proper notice." *Id*. at 1017.

So, the dispositive question here is whether the Agreement, as amended: (1) has a clear statement, like the contract in *Burford*, that Beach Forwarders may terminate *only* upon a material breach by Service By Air; or (2) provides, like the contract in *Jespersen*, *only* that Beach Forwarders may terminate upon a material breach by Service By Air. The Agreement unequivocally is akin to the contract in *Jespersen*: Section 20.A, which survived the Amendment unscathed, states that Beach Forwarders "*may* terminate"—the key contractual language identified by the Supreme Court of Illinois in *Jespersen*—the Agreement if it provides Service By Air with "written notice of an alleged material breach" and Service By Air fails to cure within ninety days. Doc. 1-1 at 38, § 20.A (emphasis added). Accordingly, Service By Air is wrong to argue that the Agreement clearly states that Beach Forwarders may "terminate *only* when SBA ha[s] breached and failed to cure." Doc. 20 at 9 (emphasis added). And therefore, under the principles articulated in *Burford* and *Jespersen*, the presumption that contracts of unlimited duration are terminable at will has not been overcome, which means that the Agreement, as amended, is terminable at will, which in turn means that Beach Forwarders lawfully terminated the Agreement by giving Service By Air notice in August 2020.

The one potential fly in the ointment is this passage from *Burford*: "[T]he contract expressly provided that [the sales representative] could terminate the contract at any time on thirty days' notice. The parties knew how to give a party the right to terminate at will. They

8

chose to give that right to [the sales representative] but not to [the company]." 786 F.3d at 587. Service By Air reads this passage to support its view that the Amendment, by expressly giving it the right to terminate the Agreement at any time on timely notice, necessarily deprived Beach Forwarders of that right. Doc. 20 at 8. That reading of *Burford* cannot be reconciled with *Jespersen*, where, as noted, the Supreme Court of Illinois held that the fact that the contract there granted the distributor an "express, unfettered right to terminate the agreement on proper notice … *further bolster[ed]* [the court's] conclusion that the parties … intended their agreement to be terminable at will," even though the contract did not expressly grant that right to the company. 700 N.E.2d at 1017 (emphasis added).

Under the *Erie* doctrine, the Supreme Court of Illinois has the final word on the meaning and effect of Illinois law. *See LaPlant v. Nw. Mut. Life Ins. Co.*, 701 F.3d 1137, 1141 (7th Cir. 2012) ("Under *Erie* our task is to resolve a dispute about state law the way the state's highest court would resolve it."); *Moore v. Tandy Corp.*, 819 F.2d 820, 824 (7th Cir. 1987) ("[W]e must take our cue on matters of Wisconsin state law from the Wisconsin Supreme Court."). This is so regardless of whether a federal court would have taken an approach different from that taken by the state supreme court. *See Hollander v. Brown*, 457 F.3d 688, 695 (7th Cir. 2006) ("The statements of the Supreme Court of Illinois in *Parks* [*v. Kownacki*, 737 N.E.3d 287 (Ill. 2000),] control this case. We express no view, of course, on whether *Parks* announced the correct approach or on whether it applied the doctrine of equitable estoppel correctly to the facts before it. It suffices that [the plaintiff's] theory of equitable estoppel is materially identical to the one asserted by the plaintiff in *Parks*."). Accordingly, consistent with *Erie*, this court cannot read *Burford* as negating or diminishing *Jespersen*'s holding that, under Illinois law, a provision expressly giving only one party to a contract of indefinite duration the right to terminate on

9

notice supports (or, at a minimum, does not undermine) the other party's position that the contract is terminable at will—at least where, as here, the contract provides only that the terminating party "may" terminate on the other party's material breach and does not clearly make such a material breach "the sole or exclusive basis for termination" by the terminating party. *Jespersen*, 700 N.E.2d at 1016.

Before concluding, the court observes that its holding is consistent with *County of Cook v. Kellogg Co.*, 374 F. Supp. 3d 744 (N.D. Ill. 2019), which held that this contractual provision overcame the terminable-at-will presumption:

> The City has the option to require steam heat for the said facilities so long as it determines that the steam heat is necessary and desirable for the operation of the property described on Exhibit "B", and that in the event the City notifies the County that the City no longer requires the said steam heat, the County shall have no further obligation or liability under the terms of this Agreement.

*Id*. at 753. By expressly giving the City the right to obtain steam heat from the County "so long as [the City] determines that the steam heat is necessary and desirable," the provision clearly and necessarily conveyed that the County's contractual obligation would terminate only if "the City notifie[d] the County" that it no longer needed the steam heat. *Ibid*.

## Conclusion

Because the Agreement, as amended, is unambiguous in all material respects, the court denies Service By Air's request to take discovery. Doc. 20 at 12-14; *see In re Duckworth*, 776 F.3d 453, 456 (7th Cir. 2014) ("Illinois adopts the familiar principle that an unambiguous contract is interpreted by the court as a matter of law without use of parol evidence."); *McWane, Inc. v. Crow Chicago Indus., Inc*., 224 F.3d 582, 584 (7th Cir. 2000) ("If the district court determines that the contract is unambiguous, it may determine its meaning as a matter of law."). Beach Forwarders's motion for judgment on the pleadings is granted. The court declares that the

Agreement, as amended, is terminable at will by either party, and therefore that Beach Forwarders lawfully terminated the Agreement in August 2020.

January 12, 2022                              _____
                                                     United States District Judge

11